In re the Commitment of William L. Morford:

State of Wisconsin, Petitioner-Respondent,

v.

William L. Morford, Respondent-Appellant-Petitioner.

Supreme Court

*No. 01–2461. Oral argument September 9, 2003.—
Decided February 3, 2004.*

2004 WI 5

(Also reported in 674 N.W.2d 349.)

301

For the respondent-appellant-petitioner there were briefs by *Lynn E. Hackbarth* and *Law Offices of Lynn Ellen Hackbarth,* Milwaukee, and oral argument by *Lynn E. Hackbarth.*

For the petitioner-respondent the cause was argued by *Warren D. Weinstein,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is a review of an unpublished decision of the court of appeals[1] affirming orders of the circuit court for Milwaukee County, Daniel L. Konkol, Judge. The circuit court granted the district attorney's motion to reconsider its decision placing William L. Morford on supervised release and denied William L. Morford's motion for reconsideration. The circuit court concluded that Morford was still a sexually violent person and that it was still substantially probable that he would engage in acts of sexual violence if not placed in institutional care. The circuit court therefore granted the State relief from Morford's supervised release and ordered Morford committed to the custody of the Department of Health and Family Services (the department) for control, care, and treatment in an institutional setting.

¶ 2. Morford then moved the circuit court to reconsider its order of institutionalization for several reasons, including that the circuit court used statutorily improper proceedings to give the State relief from

---

[1] *State v. Morford,* No. 01–2461, unpublished slip op. (Wis. Ct. App. Nov. 19, 2002).

his supervised release. The circuit court denied Morford's motion, and Morford appealed from this order of denial.

¶ 3. The court of appeals affirmed the order of the circuit court, concluding that Wis. Stat. § (Rule) 806.07(1)(h) (1999–2000)[2] governs reconsideration of the circuit court's original decision to place Morford on supervised release and that the requirements of § 806.07(1)(h) were satisfied.

¶ 4. The sole issue we address in this case is whether Wis. Stat. § 806.07(1)(h) or 980.08(6m) is the vehicle for changing the supervised release status of an individual who, like Morford, has been determined to be appropriate for supervised release but who remains institutionalized awaiting placement.[3]

■

¶ 5. We hold that Wis. Stat. § 980.08(6m), rather than § 806.07(1)(h), governs granting relief to the State from a chapter 980 committee's supervised release when the committee is confined in an institution awaiting placement on supervised release. Any language or inference in *State v. Castillo*, 205 Wis. 2d 599, 556 N.W.2d 425 (Ct. App. 1996), *State v. Williams*, 2001 WI

---

[2] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

[3] Morford argues, in part, that neither Wis. Stat. § 980.08(6m) nor § 806.07(1) provides a procedure for granting the State relief from a supervised release for which placement has not been made. We are not convinced by this argument. The legislature could not have intended that the State be able to get relief from the supervised release of a chapter 980 committee in the community under supervised release but not from the supervised release of an individual who is awaiting release. Such an interpretation of the statutes produces an absurd result that is contrary to the purposes of chapter 980.

App 155, 246 Wis. 2d 722, 631 N.W.2d 623, or *State v. Sprosty,* 2001 WI App 231, ¶ 16, 248 Wis. 2d 480, 636 N.W.2d 213, limiting the application of § 980.08(6m) to a chapter 980 committee who has actually been released under supervised release into the community is withdrawn.

I

¶ 6. Morford is now on supervised release, and the issues he raised in order to obtain his supervised release are moot. A determination of these issues will have no practical effect on Morford.[4]

¶ 7. Reviewing courts generally decline to decide moot issues but may do so under certain circumstances. This court has held that it may decide an otherwise moot issue if it: (1) is of great public importance; (2) occurs so frequently that a definitive decision is necessary to guide circuit courts; (3) is likely to arise again and a decision of the court would alleviate uncertainty; or (4) will likely be repeated, but evades appellate review because the appellate review process cannot be completed or even undertaken in time to have a practical effect on the parties.[5]

¶ 8. We conclude that the sole issue proposed to be addressed, that is, the appropriate mechanism for changing the supervised release status of a chapter 980

---

[4] We granted the petition for review in this case on March 13, 2003. On April 28, 2003, the defendant was placed on supervised release pursuant to a subsequent periodic review. On September 9, 2003, we heard oral argument in the case.

[5] *In re John Doe Proceeding,* 2003 WI 30, ¶ 19, 260 Wis. 2d 653, 660 N.W.2d 260.

committee who has been determined to be appropriate for supervised release but who remains institutionalized and awaiting placement, satisfies several exceptions to the mootness rule.

¶ 9. The release of a chapter 980 committee is an issue of great public importance because it implicates both the safety of the public and the rights of the detained individual.

¶ 10. The issue presented recurs with some frequency. This is the fourth time since 1996, in a published case, that the appropriate procedure for reconsidering a chapter 980 committee's supervised release has arisen, and a decision from this court will provide guidance to the circuit courts.

¶ 11. This issue is likely to arise again and may evade review. The time between a circuit court's determination that a person is eligible for supervised release and the person's being placed on supervised release may be substantial, as in the present case.[6] Indeed, the statute contemplates a time lag between a circuit court's finding a person eligible for supervised release and the actual placement on supervised release. The Department of Health and Family Services prepares a plan for supervised release that the circuit court must review and approve.[7] Furthermore, while a chapter 980 committee litigates a denial of supervised relief, he or she may in the interim—as occurred in this case—be placed on supervised release, making the cases moot and tending to evade review.

---

[6] *See In re Commitment of Rachel,* 2002 WI 81, ¶¶ 76–80, 254 Wis. 2d 215, 647 N.W.2d 762 (Bradley, J., concurring) (discussing the difficulty of finding appropriate placement facilities for sexually violent persons and the concomitant delay).

[7] Wis. Stat. § 980.08(5).

¶ 12. We conclude that the issue raised by this case that we address satisfies exceptions to the mootness rule, and we therefore address it.

## II

¶ 13. This case is procedurally convoluted, and we set forth an abbreviated version of the facts relevant to render a decision on the sole issue we address.

¶ 14. On July 31, 1997, Morford was committed as a sexually violent person under Wis. Stat. chapter 980. Pursuant to the language of Wis. Stat. § 980.06(2)(a)(1) (1993–94)[8] at the time of his commitment, the circuit court determined that he be placed on supervised release. Because no halfway house was available, Morford remained at the Wisconsin Resource Center (WRC), a secure facility. Morford appealed, arguing that he was entitled to be held in a less restrictive facility. The court of appeals agreed and directed the circuit court to oversee the search for an appropriate placement.

¶ 15. While the Department of Health and Family Services searched for a supervised release placement for Morford the circuit court repeatedly reviewed the status of the search, and Morford's case came up for two periodic reviews. The medical and psychological reports submitted during these periodic reviews suggested that Morford might not be appropriate for supervised release.

¶ 16. At a March 15, 2000, proceeding on the supervised release plan, the circuit court expressed concern that Morford was not an appropriate candidate for supervised release.

---

[8] The legislature removed the supervised release option for the initial commitment in 1999. *See* 1999 Wis. Act 9, § 3223(h).

¶ 17. On May 4, 2000, the district attorney filed a document entitled "motion for reconsideration of supervised release." The motion cited no statutory authority as a basis for the motion.

¶ 18. The circuit court held evidentiary proceedings on the district attorney's motion on March 8, May 7, and May 8, 2001, and heard testimony from experts who evaluated Morford's suitability for supervised release. At the close of the proceedings, the circuit court granted the district attorney's motion for reconsideration. Although the circuit court never used the words "revocation of supervised release," the effect of the circuit court's order was to revoke Morford's supervised release. Morford sought reconsideration of the circuit court's order. The court of appeals affirmed the orders of the circuit court granting the district attorney's motion and denying Morford's motion for reconsideration. ·

### III

¶ 19. The question whether Wis. Stat. § 806.07(1)(h) or 980.08(6m) is the vehicle for changing the supervised release status of a chapter 980 committee who has not yet been released requires interpretation of two statutes, Wis. Stat. §§ 806.07(1)(h) and 980.08(6m). The interpretation of statutes is a question of law that this court decides independently of the circuit court and court of appeals, but benefiting from the analysis of both.[9]

¶ 20. To decide the issue presented, we examine both Wis. Stat. § 806.07(1)(h) and 980.08(6m), as well

---

[9] *See State v. Cole,* 2003 WI 59, ¶ 12, 262 Wis. 2d 167, 663 N.W.2d 700.

as three cases of the court of appeals that have touched upon the interplay between these two statutes.

¶ 21. Our goal in interpreting statutes is to discern and give effect to the intent of the legislature.[10] Statutory interpretation begins with the language of the statute. Each word should be looked at so as not to render any portion of the statute superfluous.[11] But "courts must not look at a single, isolated sentence or portion of a sentence" instead of the relevant language of the entire statute.[12] Furthermore, a statutory provision must be read in the context of the whole statute to avoid an unreasonable or absurd interpretation.[13] Statutes relating to the same subject matter should be read together and harmonized when possible.[14] A cardinal rule in interpreting statutes is to favor an interpretation that will fulfill the purpose of a statute over an interpretation that defeats the manifest objective of an act.[15] Thus a court must ascertain the legislative intent from the language of the statute in relation to its

---

[10] *Cole*, 262 Wis. 2d 167, ¶ 13 (citing *State v. Szulczewski*, 216 Wis. 2d 495, 504, 574 N.W.2d 660 (1998)).

[11] *Landis v. Physicians Ins. Co. of Wis.*, 2001 WI 86, ¶ 16, 245 Wis. 2d 1, 628 N.W.2d 893; *Alberte v. Anew Health Care Servs.*, 2000 WI 7, ¶ 10, 232 Wis. 2d 587, 605 N.W.2d 515.

[12] *Landis*, 245 Wis. 2d 1, ¶ 16 (quoting *Alberte*, 232 Wis. 2d 587, ¶ 10).

[13] *Alberte*, 232 Wis. 2d 587 ¶ 10.

[14] *Cole*, 262 Wis. 2d 167, ¶ 13 (citing *State v. Leitner*, 2002 WI 77, ¶ 30, 253 Wis. 2d 449, 646 N.W.2d 341).

[15] *State v. Davis*, 2001 WI 136, ¶ 13, 248 Wis. 2d 986, 637 N.W.2d 62.

context, history, scope, and objective, including the consequences of alternative interpretations.[16]

## IV

¶ 22. We first consider the language of the statutes in question. Section 806.07(1)(h), which is part of chapter 806 entitled "Civil Procedure—Judgment," provides for relief from a judgment or order for any reasons justifying relief from the operation of the judgment.[17] Section 806.07 applies to all civil actions and special proceedings, "except where different procedure is prescribed by statute or rule."[18] A chapter 980 proceeding

---

[16] *Cole,* 262 Wis. 2d 167, ¶ 13 (citing *State v. Davis,* 2001 WI 136, ¶ 13, 248 Wis. 2d 986, 637 N.W.2d 62).

[17] Wisconsin Stat. § 806.07(1) reads as follows:

Relief from judgment or order. (1) On motion and upon such terms as are just, the court, subject to subs. (2) and (3), may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:

(a) Mistake, inadvertence, surprise, or excusable neglect;

(b) Newly-discovered evidence which entitles a party to a new trial under s. 805.15(3);

(c) Fraud, misrepresentation, or other misconduct of an adverse party;

(d) The judgment is void;

(e) The judgment has been satisfied, released or discharged;

(f) A prior judgment upon which the judgment is based has been reversed or otherwise vacated;

(g) It is no longer equitable that the judgment should have prospective application; or

(h) Any other reasons justifying relief from the operation of the judgment.

[18] Wis. Stat. § 801.01(2).

is a civil action[19] and § 806.07 may, by its terms, apply to a chapter 980 proceeding unless a different procedure is prescribed by statute or rule.[20] We therefore must determine whether a different procedure is prescribed by chapter 980 with respect to the reconsideration of determinations of supervised release.

¶ 23. Section 980.08 governs the procedure for supervised release of a person committed under chapter 980. Section 980.08(1) provides who may petition for the release of a sexually violent person and when they may do so.[21] Section 980.08(4) concerns the factors a

---

[19] *In re Commitment of Lombard,* 2003 WI App 163, ¶ 26, 266 Wis. 2d 887, 669 N.W.2d 157 (chapter 980 proceedings are civil, not criminal, in nature); *In re Commitment of Thiel,* 2001 WI App 52, ¶ 9, 241 Wis. 2d 439, 625 N.W.2d 321 (refusing to follow rule of retroactive application of changes in the criminal law because chapter 980 proceedings are civil, not criminal).

[20] *See, e.g., In re Commitment of Treadway,* 2002 WI App 195, ¶ 22, 257 Wis. 2d 467, 651 N.W.2d 334 (number of peremptory challenges available in chapter 980 proceedings governed by civil procedure rules); *In re Commitment of Wolfe,* 2001 WI App 136, ¶ 48, 246 Wis. 2d 233, 631 N.W.2d 240 (general provisions of civil procedure inapplicable with respect to commencing chapter 980 proceedings because chapter 980 provides its own mechanism for commencing an action); *State v. Brown,* 215 Wis. 2d 716, 718–21, 573 N.W.2d 884 (Ct. App. 1997) (individuals subject to chapter 980 proceedings have a right to judicial substitution because Wis. Stat. § 801.01(2) states that the procedures of Wis. Stat. chs. 801–847 apply to all civil proceedings except where different procedure is prescribed by statute or rule).

[21] Wisconsin Stat. § 980.08(1) states that:

(1) Any person who is committed under s. 980.06 may petition the committing court to modify its order by authorizing supervised release if at least 18 months have elapsed since the initial commitment order was entered or at least 6 months have elapsed since the most recent release petition was denied or the most

court may consider in deciding whether to release an individual and the burden of proof required to prevent a sexually violent person from being released.[22] Section 980.08(5) governs the placement process.[23] Finally, § 980.08(6m) controls the circumstances under which an individual's supervised release may be revoked and who may initiate such revocation proceedings.

recent order for supervised release was revoked. The director of the facility at which the person is placed may file a petition under this subsection on the person's behalf at any time.

[22] Wisconsin Stat. § 980.08(4) provides, in part, that:

The court shall grant the petition unless the state proves by clear and convincing evidence that the person is still a sexually violent person and that it is still substantially probable that the person will engage in acts of sexual violence if the person is not continued ·in institutional care. In making a decision under this subsection, the court may consider, without limitation because of enumeration, the nature and circumstances of the behavior that was the basis of the allegation in the petition under s. 980.02(2)(a), the person's mental history and present mental condition, where the person will live, how the person will support himself or herself and what arrangements are available to ensure that the person has access to and will participate in necessary treatment, including pharmacological treatment using an antiandrogen or the chemical equivalent of an antiandrogen if the person is a serious child sex offender.

[23] Wisconsin Stat. § 980.08(5) provides, in part, that:

If the court finds that the person is appropriate for supervised release, the court shall notify the department. The department and the county department under s. 51.42 in the county of residence of the person, as determined under s. 980.105, shall prepare a plan that identifies the treatment and services, if any, that the person will receive in the community. The plan shall address the person's need, if any, for supervision, counseling, medication, community support services, residential services, vocational services, and alcohol or other drug abuse treatment.

313

¶ 24. The key sentences in Wis. Stat. § 980.08(6m),[24] for purposes of the present case, governing revocation of supervised release read as follows:

> *If the department alleges that a released person has violated any condition or rule, or that the safety of others requires that supervised release be revoked, he or she*

---

[24] Wisconsin Stat. § 980.08(6m) reads in its entirety as follows:

980.08(6m) An order for supervised release places the person in the custody and control of the department. The department shall arrange for control, care and treatment of the person in the least restrictive manner consistent with the requirements of the person and in accordance with the plan for supervised release approved by the court under sub. (5). A person on supervised release is subject to the conditions set by the court and to the rules of the department. Before a person is placed on supervised release by the court under this section, the court shall so notify the municipal police department and county sheriff . . . . *If the department alleges that a released person has violated any condition or rule, or that the safety of others requires that supervised release be revoked, he or she may be taken into custody under the rules of the department.* The department shall submit a statement showing probable cause of the detention and a petition to revoke the order for supervised release to the committing court and the regional office of the state public defender responsible for handling cases in the county where the committing court is located within 72 hours after the detention, excluding Saturdays, Sundays and legal holidays. The court shall hear the petition within 30 days, unless the hearing or time deadline is waived by the detained person. Pending the revocation hearing, the department may detain the person in a jail or in a hospital, center or facility specified by s. 51.15(2). *The state has the burden of proving by clear and convincing evidence that any rule or condition of release has been violated, or that the safety of others requires that supervised release be revoked. If the court determines after hearing that any rule or condition of release has been violated, or that the safety of others requires that supervised release be revoked, it may revoke the order for supervised release and order that the released person be placed in an appropriate institution until the person is discharged from the commitment under s. 980.09 or until again placed on supervised release under this section.* (emphasis added).

*may be taken into custody under the rules of the department. . . . The state has the burden of proving by clear and convincing evidence that any rule or condition of release has been violated, or that the safety of others requires that supervised release be revoked. If the court determines after hearing that any rule or condition of release has been violated, or that the safety of others requires that supervised release be revoked, it may revoke the order for supervised release and order that the released person be placed in an appropriate institution until the person is discharged from the commitment under s. 980.09 or until again placed on supervised release under this section.* (emphasis added).

¶ 25. These key sentences of § 980.08(6m) are susceptible to at least two readings. If we read the first sentence grammatically, the adjective "released" modifying the noun "person" applies only to the first clause of the sentence and not to the second clause of the sentence, which is logically separated by the disjunctive "or." In other words, the department must allege and prove either (1) that a *released* person has violated any condition or rule, or (2) that the safety of others requires that supervised release be revoked. The second sentence quoted above supports this grammatical reading. Under this reading, Wis. Stat. § 980.08(6m) governs not only those chapter 980 committees who are actually released but also those who are awaiting placement on supervised release. The last sentence uses the phrase released person and therefore can be read, as the court of appeals did in this case, to mean that a circuit court may revoke supervised release if the department alleges and proves either (1) that a *released person* has violated any condition or rule, or (2) that a *released person* jeopardizes the safety of others. Under this

315

reading, Wis. Stat. § 980.08(6m) governs only those chapter 980 committees who are actually released on supervised release.

¶ 26. This seeming ambiguity in the key sentences of Wis. Stat. § 980.08(6m) is not resolved by looking at the subsection as a whole or the subsection in the context of chapter 980. Indeed chapter 980 has other conflicting language. For instance, Wis. Stat. § 980.08(6m) and other provisions in chapter 980 use the word "custody" inconsistently.

¶ 27. The use of the word "custody" in Wis. Stat. chapter 980 is particularly problematic. In § 980.06, a person who is deemed sexually violent "shall be committed to the custody of the department for control, care and treatment." After a committed individual is found to be appropriate for supervised release, an order for supervised release, according to § 980.08(6m), "places the person in the custody and control of the department." Further, under § 980.08(6m), if the "department alleges that a released person has violated any condition or rule, or that the safety of others requires that supervised release be revoked, he or she may be taken into custody under the rules of the department." Read literally, these provisions make little sense, since they thrice place the committed individual in the custody of the department without ever having actually removed him from the department's custody. This is just one example in which chapter 980 is less than clear on its face.

¶ 28. Keeping in mind the linguistic shortfalls of § 980.08(6m), we examine how the court of appeals has interpreted § 980.08(6m) to aid our own interpretive process.

¶ 29. Three court of appeals cases are relevant. In *State v. Castillo,* 205 Wis. 2d 599, 556 N.W.2d 425 (Ct.

App. 1996), the court of appeals declared that Wis. Stat. § 980.06(2)(d) (1993–94), the precursor to § 980.08(6m),[25] did not provide a statutory basis for courts to revoke the supervised release order of a sexually violent person who had not, as yet, been physically released from a secure facility. Section 980.08(6m), according to *Castillo,* "pertains only to *released persons* who are already under the custody and control of DHSS."[26]

¶ 30. In *Castillo,* the 14-year-old defendant was found delinquent on two counts of first-degree sexual assault.[27] Before Castillo's release, the State filed a petition under Wis. Stat. chapter 980 to commit him as a sexually violent person.[28] Castillo offered to acknowledge that the allegations contained within the petition were true and to waive his right to a trial if the department placed him in a community-based facility.[29]

¶ 31. The department experienced difficulty in placing Castillo and moved to reopen the order and modify it to allow Castillo to be placed in a secure facility.[30] The circuit court granted the State's motion and placed Castillo at the WRC.[31] The court of appeals reversed the circuit court and concluded that the State

---

[25] The legislature renumbered Wis. Stat. § 980.06(2)(d) to Wis. Stat. § 980.08(6m) in 1999. *See* 1999 Wis. Act 9, § 3223(1).

[26] *State v. Castillo,* 205 Wis. 2d 599, 609, 556 N.W.2d 425 (Ct. App. 1996) (emphasis in original).

[27] *Id.* at 603.

[28] *Id.* at 604–05.

[29] *Id.*

[30] *Id.* at 605–06.

[31] *Id.* at 606.

breached its plea agreement with Castillo by requesting the modification[32] and allowed Castillo to withdraw his plea.[33]

¶ 32. The precursor to Wis. Stat. § 980.08(6m) was not directly at issue before the court of appeals in *Castillo* and § 806.07(1) is not mentioned in the opinion. The issue before the court of appeals was whether the State had breached the plea agreement and whether Castillo should have been allowed to withdraw his plea admitting the allegations supporting the petition to commit him as a sexually violent person. The question of what statutory authority the State could use to initiate revocation proceedings with regard to an individual who had not yet been released was a secondary issue to be reached only if Castillo were not allowed to withdraw his plea.

¶ 33. The court of appeals concluded in *Castillo* that the State was not relieved of its burden to comply with the plea agreement merely because finding an appropriate placement proved difficult. The court of appeals' language dealing with the key sentences we address was brief, conclusory, and without explanation or full analysis of the statutory language. The parties' briefs in *Castillo* expended little effort on this issue, and the court of appeals followed suit. The court of appeals' language relating to the applicability of Wis. Stat. § 980.08(6m) was dicta not necessary to the decision in the case.[34]

---

[32] *Id.* at 608.

[33] *Id.* at 611.

[34] For discussions of Wisconsin's views on dictum, *see, e.g.,* *State v. Picotte,* 2003 WI 42, ¶¶ 60–61 n.16, 261 Wis. 2d 249, 661 N.W.2d 381 (reviewing two lines of cases on dictum); *State v. Leitner,* 2002 WI 77, ¶ 22 n.16, 253 Wis. 2d 449, 646 N.W.2d 341

¶ 34. Although this court granted a petition for review in *Castillo,* none of the parties briefed the Wis. Stat. § 980.08(6m) issue in this court. The petition for review was ultimately dismissed as improvidently granted, and this court made no mention of § 980.08(6m) in disposing of the case.[35]

¶ 35. *Castillo* does not provide much of a foundation for concluding that Wis. Stat. § 806.07(1)(h) applies to the present case. The court of appeals has seemingly followed the *Castillo* dicta three times, but its subsequent cases have not strengthened or built upon *Castillo's* weak foundation.

¶ 36. In *State v. Williams,* 2001 WI App 155, 246 Wis. 2d 722, 631 N.W.2d 623, a chapter 980 committee challenged a circuit court's order granting the State's motion for relief from a prior order granting the committee's petition for supervised release. Without addressing the underlying question whether

(same); *State v. Sartin,* 200 Wis. 2d 47, 60 n.7, 546 N.W.2d 449 (1996) ("dictum is a statement in a court's opinion that goes beyond the facts in the case and is broader than necessary and not essential to the determination of the issues before it"; dictum is not controlling); *State v. Koput,* 142 Wis. 2d 370, 386 n.12, 418 N.W.2d 804 (1988) (it is not inappropriate for a court to evaluate statements in Supreme Court opinions on the basis of whether they constitute dicta); *Nicholson v. Home Ins. Cos.,* 137 Wis. 2d 581, 602, 405 N.W.2d 327 (1987) (disapproving of discussion of reducing clause in *Radlein v. Indus. Fire & Cas. Ins. Co.,* 117 Wis. 2d 605, 345 N.W.2d 874 (1984), as dicta); *Am. Family Mut. Ins. Co. v. Shannon,* 120 Wis. 2d 560, 565, 356 N.W.2d 175 (1984) (adopting the generally accepted doctrine that "a statement not addressed to the question before the court or necessary for its decision" is dictum, and not binding on the court); *Reiter v. Dyken,* 95 Wis. 2d 461, 474, 290 N.W.2d 510 (1980) (same).

[35] *State v. Castillo,* 213 Wis. 2d 488, 570 N.W.2d 44 (1997).

§ 806.07(1) was an appropriate mechanism to grant relief from the supervised release of a sex offender, the court of appeals concluded that the "new evidence" that the State provided to justify the relief was not new under § 806.07(1). In making its decision, the court of appeals did not cite *Castillo,* much less justify or explain its reliance on § 806.07 for a chapter 980 case.

¶ 37. After the *Williams* case came *State v. Sprosty,* 2001 WI App 231, ¶ 16, 248 Wis. 2d 480, 636 N.W.2d 213, in which the court of appeals assumed, without discussion, that Wis. Stat. § 806.07(1) could be used to grant the State relief from a supervised release. The court of appeals focused on whether "extraordinary circumstances" were present to justify the statute's use in that particular case. Again, the court of appeals did not cite *Castillo* or *Williams* for the proposition at issue.[36] It did not explain or justify its reliance on § 806.07 in a chapter 980 case.

¶ 38. In the present case, the court of appeals determined that Wis. Stat. § 806.07(1) applied to the facts of the case, but again its opinion provides no further assistance in analyzing whether § 806.07(1) should apply at all. Again the court of appeals cited no case in support of its conclusion. Its opinion on this issue is, like the opinions in the other three cases, brief and conclusory, without any citation to prior cases.

¶ 39. The court of appeals' reasoning is somewhat different in the present case, however, and requires additional consideration. In this case, the court of appeals relied on the label the district attorney and circuit court placed on the proceeding to conclude that

---

[36] The *Sprosty* court did cite *State v. Williams,* 2001 WI App 155, 246 Wis. 2d 722, 631 N.W.2d 623, for the standard of review, however. *State v. Sprosty,* 2001 WI App 231, ¶ 18, 248 Wis. 2d 480, 636 N.W.2d 213.

Wis. Stat. § 806.07(1)(h) applied. The court of appeals stated that the proceeding was titled a motion for reconsideration of supervised release rather than a motion to revoke Morford's supervised release, even though neither the district attorney nor the circuit court cited any statutory authority, including Wis. Stat. § 806.07(1)(h) or § 980.08(6m), justifying the proceeding. The court of appeals reasoned that § 980.08(6m) could not govern such a proceeding because a § 980.08(6m) proceeding would have to have been brought by the Department of Health and Family Services. The court of appeals recognized that the motion in this case was brought by the district attorney. It therefore looked at the label the district attorney and the circuit court placed on the motion, namely "reconsideration," and concluded without further explanation that "the proceedings in question were held in accordance with § 806.07 rather than § 980.08(6m)."[37]

---

[37] The relevant portion of the court of appeals' decision states as follows:

> Morford mischaracterizes the hearing below as a revocation proceeding, held pursuant to Wis. Stat. § 980.08, rather than a hearing on the State's motion for reconsideration, held pursuant to Wis. Stat. § 806.07. First, as admitted by Morford, DHFS did not file a petition to revoke his supervised release, a procedure required by both § 980.08(6m) and due process. *See State v. VanBronkhorst*, 2001 WI App 190, ¶¶ 7–8, 247 Wis. 2d 247, 633 N.W.2d 236. Second, on May 4, 2000, the State filed a motion entitled, "motion for reconsideration of supervised release." Third, and finally, at the outset of the evidentiary hearing held on this matter, the trial court informed the parties that they were proceeding on the "State's motion [ ] for reconsideration of the supervised release." Thus, we conclude that the proceedings in question were held in accordance with § 806.07 rather than § 980.08(6m). Accordingly, the trial court was statutorily authorized to review the order granting Morford's supervised release.

¶ 40. The State urges us to withdraw the dicta in *Castillo* (and any reliance thereon in *Williams* and *Sprosty*) that the appropriate vehicle for the State to seek relief from a chapter 980 committee's pending supervised release is under Wis. Stat. § 806.07.[38] The State reminds us that circuit courts and the court of appeals have no power to disavow *Castillo*'s reliance on Wis. Stat. § 806.07(1)(h).[39] Only this court may do so.[40]

¶ 41. The State urges us to hold that Wis. Stat. § 980.08(6m), not § 806.07(1)(h), applies and the State seeks relief from a chapter 980 committee's status of supervised release when the committee has not yet been released on supervised release. The State asks this court to hold that the Department of Health and Family Services may petition for revocation of supervised release under Wis. Stat. § 980.08(6m) whenever it believes that a person who is the subject of a supervised release decision (whether or not the individual is re-

---

*State v. Morford,* No. 01–2461, unpublished slip op., ¶ 9 (Wis. Ct. App. Nov. 19, 2002).

[38] The State nevertheless argues that § 806.07(1)(h) should be available one last time in this case because *Castillo* dictated its use. We need not decide this issue because it is moot.

[39] *Cook v. Cook,* 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) ("If the court of appeals is to be a unitary court, it must speak with a unified voice. If the constitution and statutes were interpreted to allow it to overrule, modify or withdraw language from its prior published decisions, its unified voice would become fractured, threatening the principles of predictability, certainty and finality relied upon by litigants, counsel and the circuit courts.").

[40] *Id.* ("[O]nly the supreme court, the highest court in the state, has the power to overrule, modify or withdraw language from a published opinion of the court of appeals.").

leased on supervised release) violates any condition or rule or threatens the safety of others.

¶ 42. We agree with the State. Wisconsin Stat. § 980.08(6m) is better suited for granting the State relief from a chapter 980 committee's supervised release than § 806.07(1)(h), regardless of whether the chapter 980 committee has actually been placed on supervised release. We conclude that the court of appeals erred in its interpretation of § 980.08(6m). We reach this conclusion for several reasons.

¶ 43. First, as we explained previously, the text of Wis. Stat. § 980.08(6m) can be read to support the notion that if a chapter 980 committee is awaiting placement on supervised release and continues to be held in a secure facility, the department may petition for revocation of a determination of supervised release.

¶ 44. Second, Wis. Stat. § 980.08(6m) provides a comprehensive scheme for releasing chapter 980 committees on supervised release and for revoking supervised release. By effectively occupying the field on the subject, the legislature implicitly sought to preclude procedural short-cuts like the one provided by § 806.07(1)(h). Interpreting Wis. Stat. § 980.08(6m) as governing chapter 980 committees pending placement on supervised release supports the legislature's intent to establish a comprehensive, uniform, and fair procedure for supervised release. "The spirit or intention of the statute should govern over the literal or technical meaning of the language used."[41]

¶ 45. Third, using Wis. Stat. § 806.07(1)(h) to grant the State relief from supervised release presents

[41] *City of Madison v. Town of Fitchburg,* 112 Wis. 2d 224, 236, 332 N.W.2d 782 (1983).

far more tortuous interpretive issues than reading § 980.08(6m) as governing the present case. Individuals committed under chapter 980 are entitled to due process protections such as reasonable notice, the right to counsel, the right to remain silent, the right to present and cross-examine witnesses, and the use of the heightened burden of proof of clear and convincing evidence. Section 806.07(1)(h) does not provide these protections.

¶ 46. To assure due process, the concurrence reads into Wis. Stat. § 806.07(1)(h) the constitutional protections provided under chapter 980.

¶ 47. This court would have to perform interpretive backbends to retrofit the protections afforded by Wis. Stat. chapter 980 onto § 806.07(1)(h). If we must choose between applying the due process protections under chapter 980 to Wis. Stat. § 806.07(1)(h) or interpreting § 980.08(6m) as applying to chapter 980 committees awaiting placement under supervised release, it is not a difficult choice. We see no reason to tack the protections afforded by chapter 980 onto Wis. Stat. § 806.07(1)(h) when § 980.08(6m) is readily available to apply to the present case. Using § 806.07(1)(h) needlessly complicates granting the State relief from a chapter 980 committee's supervised release.

¶ 48. Fourth, attempting to engraft chapter 980 onto Wis. Stat. § 806.07(1) would pose legal problems requiring future litigation. For example, a circuit court makes different findings under §§ 806.07(1)(h) and 980.08(6m). Under § 806.07(1)(h), a circuit court must find extraordinary circumstances in order to relieve a party from an order or judgment. Under § 980.08(6m), a circuit court must find that a released person has violated any condition or rule or that the safety of others requires that supervised release be revoked.

¶ 49. Furthermore, different standards of appellate review may be implicated under the two sections. The standard of review under Wis. Stat. § 806.07(1)(h) is erroneous exercise of discretion. The standard for review under § 980.08(6m), however, is, according to the State's brief, more complex depending on whether a request for revocation alleges a violation of a rule or condition of supervised release or alleges that the safety of others requires revocation.

¶ 50. The State asserts that the clearly erroneous standard of review applies to the factual determination of whether a rule or condition was violated. When revocation is initiated on grounds of public safety, unresolved questions of the appropriate standard of appellate review and the powers of a circuit court are presented, according to the State: For purposes of appellate review, is a circuit court's determination about the safety of others a question of fact or law or a mixed question of fact and law? After finding that the safety of others requires revocation of supervised release, does a circuit court have discretion to modify the supervised release rather than revoke it?[42]

¶ 51. These and other problems can be avoided entirely by applying Wis. Stat. § 980.08(6m) to chapter 980 committees awaiting placement under supervised release. Applying § 980.08(6m) favors judicial economy and lends clarity to this body of law.

¶ 52. Fifth, allowing a circuit court or district attorney to initiate proceedings on their own motion using Wis. Stat. § 806.07(1)(h) to grant the State relief from supervised release is inappropriate because it

[42] For a discussion of these issues, see Brief of Petitioner-Respondent at 16–30.

circumvents the important gate-keeping function of the Department of Health and Family Services.[43] In Wis. Stat. § 980.08(6m), the legislature placed the initial decision to seek revocation solely in the hands of the department.

■

¶ 53. The department is an integral part of the procedural protections provided to a chapter 980 committee in Wis. Stat. chapter 980. The department is charged with the "custody and control" of a sexually violent person, whether the chapter 980 committee is institutionalized or on supervised release.[44] The legislature thus views the department as being in the best position to evaluate the various risks and benefits of placing a committed individual on supervised release or revoking supervised release.

¶ 54. It is the department that has sufficient experience dealing with sexually violent persons, as well as experience with the particular individual who has been committed, to make a sound, dispassionate, and unbiased decision regarding a committed person's condition. Wisconsin Stat. § 980.08(6m) provides no procedure for initiating revocation other than by the department, and nothing in chapter 980 suggests that the legislature envisioned another method for doing so.

---

[43] The court of appeals in this case recognized that who initiates "revocation" proceedings is important because it may implicate due process rights. *State v. Morford,* No. 01–2461, unpublished slip op. at ¶ 9 (Wis. Ct. App. Nov. 19, 2002) ("DHFS did not file a petition to revoke his supervised release, a procedure required by both § 980.08(6m) and due process."). *See also State v. VanBronkhorst,* 2001 WI App 190, ¶¶ 7–8, 247 Wis. 2d 247, 633 N.W.2d 236.

[44] Wis. Stat. § 980.08(6m).

■ 55. Allowing a circuit court to initiate proceedings on its own motion,[45] as it in effect did here, or allowing a district attorney to initiate proceedings, as happened here, is contrary to the intent of the legislature, subjugates the authority of the department to the will of a circuit court or district attorney and vitiates an important safeguard the legislature provided for sex offenders.

¶ 56. For all of these reasons, we hold that Wis. Stat. § 980.08(6m), rather than § 806.07(1)(h), governs granting relief to the State from a chapter 980 committee's supervised release when the committee is confined in an institution awaiting placement on supervised release. Any language or inference in *State v. Castillo,* 205 Wis. 2d 599, 556 N.W.2d 425 (Ct. App. 1996), *State v. Williams,* 2001 WI App 155, 246 Wis. 2d 722, 631 N.W.2d 623, or *State v. Sprosty,* 2001 WI App 231, ¶ 16, 248 Wis. 2d 480, 636 N.W.2d 213, limiting the application of § 980.08(6m) to situations in which a chapter 980 committee has actually been released into the community under supervised release, is withdrawn.

*By the Court.*—Rights declared.

¶ 57. N. PATRICK CROOKS, J. (*concurring*). I concur with the majority only because I agree that the issue before us is moot. I write separately, however, because I conclude that Wis. Stat. § 806.07(1)(h) was used appropriately here to consider a person's supervised release status when that person has not as yet

---

[45] A circuit court apparently has authority to rescind at least part of its order and decision under Wis. Stat. § 806.07(1)(h) as long as both parties have adequate notice. *Gittel v. Abram,* 2002 WI App 113, ¶ 2, 255 Wis. 2d 767, 649 N.W.2d 661 (will contest case).

been released. I would not overrule or distinguish *State v. Sprosty (Sprosty III)*, 2001 WI App 231, 248 Wis. 2d 480, 636 N.W.2d 213, *State v. Brown*, 215 Wis. 2d 716, 573 N.W.2d 884 (Ct. App. 1997), and *State v. Castillo*, 205 Wis. 2d 599, 556 N.W.2d 425 (Ct. App. 1996). Rather, I would follow and apply such precedent in this case.

¶ 58. I am persuaded that the protections for such persons that are contained within Wis. Stat. ch. 980 are applicable when Wis. Stat. § 806.07(1)(h) is used. Here, however, the majority robs local district attorneys and circuit judges of a necessary tool for review of a supervised release order where extraordinary circumstances exist and protection of the public requires swift action.

¶ 59. Although the majority overrules *Castillo*, I would not do so, since *Castillo* accurately points out that Wis. Stat. § 980.08(6m) refers only to released persons. *Castillo*, 205 Wis. 2d at 609. To hold that sec. 980.08(6m) is applicable to persons who have not yet been released ignores the plain language of the statute. Thus, sec. 980.08(6m) cannot be used where a supervised release order is reviewed in regard to a person who continues to be institutionalized, nor can it be used by a district attorney or a judge who is concerned for the public's safety.

¶ 60. The reasoning in *Brown* is also applicable to this case. In *Brown*, the court of appeals observed that Wis. Stat. § 801.01(2) provided that Wis. Stat. chs. 801–847 apply to all civil proceedings, unless otherwise indicated by statute. *Brown*, 215 Wis. 2d at 721. Wisconsin Stat. ch. 980 does not contain statutory language mandating that a procedure other than Wis. Stat. § 806.07(1)(h) be used in circumstances such as those presented here. A proceeding under ch. 980 is a civil proceeding and does not contain language to the con-

trary. Thus, I am satisfied that sec. 806.07(1)(h) may be used in proceedings such as the one we are reviewing here.

¶ 61. Moreover, in *Sprosty III*, the court of appeals determined that Wis. Stat. § 806.07(1)(h) could be used in Wis. Stat. ch. 980 proceedings. *Sprosty III*, 248 Wis. 2d 480, ¶ 2. I agree with the court of appeals' conclusion that the requirement that extraordinary circumstances be present before relief is granted under sec. 806.07(1)(h) sufficiently guards against the haphazard use of this provision. *Id.*, ¶ 16.

¶ 62. With respect to Morford's proceedings, Wis. Stat. § 806.07(1)(h) was used appropriately to review and grant relief from the supervised release order. After conducting the evidentiary hearings, the circuit court found that the State presented new evidence that demonstrated that Morford was still a sexually violent person. The circuit court applied Wis. Stat. ch. 980 standards in rendering its decision as to whether the State's motion, pursuant to sec. 806.07(1)(h), should be granted.

¶ 63. Further, according to Wis. Stat. § 980.08(6m), the appropriate burden of proof is clear and convincing evidence. Where Wis. Stat. § 806.07(1)(h) is used to review and grant relief from an order granting supervised release, I conclude that, consistent with sec. 980.08(6m), the State must prove "by clear and convincing evidence that any rule or condition of release has been violated, or that the safety of others requires that supervised release be revoked." Wis. Stat. § 980.08(6m). The circuit court applied the clear and convincing evidence burden in deciding the State's motion here.

¶ 64. In the past, this court has concluded that Wis. Stat. ch. 980 provides sufficient safeguards for

329

committing sexually violent persons and does not violate due process rights. In *State v. Post,* 197 Wis. 2d 279, 293–94, 541 N.W.2d 115 (1995), we held that ch. 980 did not violate the substantive due process guarantees of the United States and Wisconsin Constitutions.[1] We rejected the respondents' arguments that a finding of a mental disorder, as required by ch. 980, was not narrowly tailored to comply with strict scrutiny. *Id.* at 307. We concluded that ch. 980, as drafted, ensures that only dangerous sexual predators with predispositions to reoffend are committed as sexually violent persons. *Id.* Moreover, we concluded that treatment was a legitimate goal under ch. 980. *Id.* at 311. We also rejected the respondents' arguments that ch. 980's definition of dangerousness was unconstitutional. *Id.* at 312. We stated that the Wisconsin Legislature's framework for discerning whether a person was predisposed to commit sexually violent acts was constitutionally sound. *Id.* at 312–13. Finally, we concluded that ch. 980 comported with due process regarding concerns of nature and duration of commitment. *Id.* at 316.

¶ 65. In *State v. Rachel,* 2002 WI 81, ¶ 68, 254 Wis. 2d 215, 647 N.W.2d 762, we held that, as amended, Wis. Stat. ch. 980 continued to comport with substantive due process requirements. We noted that, simply because a sexually violent person's access to supervised release was curtailed, ch. 980 did not violate due process. *Id.,* ¶ 66. We concluded that the intent of ch. 980 was satisfied where proceedings could be initiated

---

[1] In *State v. Post,* 197 Wis. 2d 279, 293–94, 541 N.W.2d 115 (1995), we also held that Wis. Stat. ch. 980 did not violate the equal protection guarantees of the United States and Wisconsin Constitutions.

to determine whether the dangerousness of the individual was commensurate with the level of physical confinement imposed. *Id.*

¶ 66. In *State v. Laxton,* 2002 WI 82, ¶ 23, 254 Wis. 2d 185, 647 N.W.2d 784, we held that Wis. Stat. ch. 980 satisfied the requirements of due process because, implicit in the finding that an individual should be committed as a sexually violent person because he or she has a mental disorder and is dangerous, is the presumption that the individual has difficulty in controlling his or her behavior. Because ch. 980 distinguishes between recidivists, in general, and individuals whose mental disorder makes it substantially probable that the person will engage in sexually violent behavior, we concluded that ch. 980 is narrowly tailored and, thus, comports with due process. *Id.*

¶ 67. I am satisfied that due process requires that the protections embodied in Wis. Stat. ch. 980 remain applicable when Wis. Stat. § 806.07(1)(h) is used to review and, perhaps, provide relief from an order granting supervised release. *State v. VanBronkhorst,* 2001 WI App 190, ¶ 7, 247 Wis. 2d 247, 633 N.W.2d 236. Sexually violent persons have a right to due process protections in ch. 980 revocation proceedings. *Id.* The court of appeals in *VanBronkhorst* stated that, in revocation proceedings under ch. 980, sexually violent persons are entitled to the same due process protections as those afforded to parolees and probationers. *Id.,* ¶ 9. Simply because sec. 806.07(1)(h) is used to review and grant relief from an order for supervised release, it does not follow that sexually violent persons should be without the protections afforded by ch. 980.

¶ 68. Applying the protections of Wis. Stat. ch. 980 to Wis. Stat. § 806.07(1)(h) provides appropriate protection to the public and to a sexually violent person

as well. With respect to public safety, Wis. Stat. § 980.08(6m) allows the court to consider the safety of others when determining whether a person's supervised release should be revoked. Those same safety considerations should not be discarded simply because sec. 806.07(1)(h) is used to review a supervised release order.

¶ 69. Sexually violent persons are also protected under this framework. Wisconsin Stat. ch. 980 affords multiple protections to sexually violent persons, which will remain applicable when Wis. Stat. § 806.07(1)(h) is used. Wisconsin Stat. § 980.03 outlines the rights persons have when the State files a ch. 980 petition against them. For example, under sec. 980.03(1), the person is guaranteed reasonable notice of the hearing. Further, the court of appeals has held that when a court acts on its own motion pursuant to sec. 806.07(1), parties must be given notice and be afforded the opportunity to be heard. In *Gittel v. Abram,* 2002 WI App 113, ¶ 27, 255 Wis. 2d 767, 649 N.W.2d 661, the court of appeals allowed a court, sua sponte, to initiate consideration under § 806.07(1). *Id.* In Morford's case, a motion was brought by the State, after the circuit court seemed to suggest that a review was necessary.

¶ 70. Under Wis. Stat. § 980.03(2), a person has the right to counsel,[2] the right to remain silent,[3] the right to present and cross-examine witnesses,[4] and the right to have the hearing recorded by a court reporter.[5] Section 980.03(4) provides that when a person is required to undergo an examination under Wis. Stat. ch.

---

[2] Wis. Stat. § 980.08(2)(a).

[3] Wis. Stat. § 980.08(2)(b).

[4] Wis. Stat. § 980.08(2)(c).

[5] Wis. Stat. § 980.08(2)(d).

980, he or she is allowed to hire his or her own expert to conduct an examination. Section 980.03(4) further provides that the county will pay for a court appointed expert for indigent persons.

¶ 71. Considerations of due process require that sexually violent persons must be afforded the same protections when Wis. Stat. § 806.07(1)(h) is used, as would be applicable when Wis. Stat. ch. 980 is used for a review of a supervised release order or status.

¶ 72. The majority needlessly binds the hands of district attorneys and circuit judges, and vests all of the power in the hands of the Department of Health and Family Services. Both district attorneys and circuit judges should be permitted to use Wis. Stat. § 806.07(1)(h), when necessary where extraordinary circumstances exist, to consider prior supervised release orders. By placing the burden on DHFS entirely, the majority accepts the risk that sexually violent persons, who still pose a danger to others, will be released because DHFS did not move for review of the person's continuing violent tendencies, as occurred here.

¶ 73. In summary, I conclude that Wis. Stat. § 806.07(1)(h) provided authority for the circuit court's consideration of its prior supervised release order. Here, sec. 806.07(1)(h) was used appropriately to review Morford's supervised release status and to grant relief from the circuit court's previous order. Where such statutory section is used, however, the protections afforded by Wis. Stat. ch. 980 to a person previously found to be sexually violent are still applicable, in order to satisfy the requirements of due process. Such protections were afforded to Morford in this case. These protections include the right to have reasonable notice of the hearing, the right to counsel, the right to remain

silent, the right to present and cross-examine witnesses, the right to have the hearing recorded by a court reporter, and the use of the heightened burden of proof of clear and convincing evidence.

¶ 74. Rather than follow established precedent, the majority, in this case, tosses it out and, in doing so, robs local district attorneys and circuit judges of a necessary tool for review of a supervised release order where extraordinary circumstances exist, and protection of the public requires swift action.

¶ 75. For the foregoing reasons, I respectfully concur.

¶ 76. I am authorized to state that Justices JON P. WILCOX and PATIENCE D. ROGGENSACK join this concurrence.